495 S.E.2d 784

**Richard Hervin CHAREST, Appellant,**

v.

**Melissa M. CHAREST, Respondent.**

No. 2773.

Court of Appeals of South Carolina.

Submitted Dec. 2, 1997.

Decided Dec. 22, 1997.

512

Thomas F. McDow, Rock Hill, for Appellant.

Peter H. Perrill, Rock Hill, for Respondent.

Lillian B. Wilkerson, Rock Hill, Guardian ad Litem.

ANDERSON, Judge:

This is a change of child custody action involving application of the Uniform Child Custody Jurisdiction Act (UCCJA).[1] Richard Hervin Charest (the father) petitioned for a change of custody from Melissa M. Charest (the mother) in the family court of York County. The family court found New York, rather than South Carolina, was the more convenient forum for this action since the mother and the children had been residing there for over five years. The father appeals. We

---

1. S.C.Code Ann. §§ 20–7–782 to –830 (1985 and Supp.1996).

affirm the court's finding that New York is the more appropriate forum and its determination that the father should pay the expenses for the children's return to New York.[2]

## FACTUAL/PROCEDURAL BACKGROUND

The Charests were married in 1975 and separated in 1990. The mother assumed custody of the parties' three adopted children pursuant to the terms of a separation and property settlement agreement which was approved by the family court in an order dated March 22, 1991. The Charests were divorced in August 1991. During the marriage, the family resided in York County, South Carolina. Since the divorce, the mother and the children have resided in New York.

The father commenced this action for a change of custody in July 1996 in the family court of York County. He submitted an affidavit alleging the children were being worked like "indentured servants" on the mother's 145–acre farm; that she kept farm animals in the home, endangering the health of the children; and that she had physically abused the children. The allegations were based on what the children purportedly told the father during their summer visitation, not his personal knowledge and observation.

On August 1, 1996, the family court of York County issued an *ex parte* order granting emergency temporary custody of the parties' three children to the father pending a hearing scheduled for August 30, 1996. The children were then 15, 13, and 10 years old. The mother filed a motion to reconsider and an affidavit in support of her motion. In the affidavit, the mother asserted the *ex parte* order was based on unsubstantiated allegations. She stated the children were required to perform "minor tasks" on the farm, but denied the chores were out of the ordinary or that they interfered with the children's school work and extracurricular activities. She admitted "young, small animals with special needs" were periodically kept in a special area in the home, but stated the home was not unsanitary and the animals were "always contained within that area by means of a crate or other fencing materials." The mother asserted that based on the UCCJA,

---

2. We decide this case without oral argument pursuant to Rule 215, SCACR.

the action should be heard in New York because it had been the children's home state since the 1991 court order granting custody to her, and all of the witnesses who had been around the children since that time were in New York.

An emergency hearing was held on August 27, 1996. By order dated the same day, the family court vacated its August 1st order, finding neither parent was guilty of abusing the children. The court found that since the March 22, 1991 order granting custody of the three children to the mother, the mother and the children had resided on a permanent basis in New York. The court found New York "is the area where the facts concerning the children and their circumstances are and is the appropriate forum for a proper determination of custody to be made. New York has [maintained] the closest connections to the children and the Mother for the past five years." The court found New York is the home state and the state with the most significant connections to the children, and it concluded New York was the more convenient forum to hear the custody action. The order stayed further proceedings in South Carolina, but provided, however, that if neither party brought an action in New York within 60 days, it would "revisit the matter to determine if jurisdiction is appropriate in this Court." Until such time, the March 1991 awarding custody to the mother would remain in effect. The father appeals.

## ISSUES

1. Did the family court err in vacating its initial decision to award temporary custody to the father?
2. Did the family court err in declining to hear the change of custody action in South Carolina?
3. Did the family court err in ordering the father to pay the children's travel expenses?

## STANDARD OF REVIEW

In appeals from the family court, the Court of Appeals has the authority to find the facts in accordance with its own view of the preponderance of the evidence. *Rutherford v. Rutherford,* 307 S.C. 199, 414 S.E.2d 157 (1992); *Owens v. Owens,*

320 S.C. 543, 466 S.E.2d 373 (Ct.App.1996). This broad scope of review does not, however, require this Court to disregard the findings of the family court. *Stevenson v. Stevenson,* 276 S.C. 475, 279 S.E.2d 616 (1981).

The family court in its discretion may enter an order declining to exercise jurisdiction based on a finding that it is an inconvenient forum, which this Court will uphold absent an abuse of that discretion. *Mansour v. Mansour,* 296 S.C. 215, 371 S.E.2d 537 (1988) (where substantial evidence about the children's present and future care, protection, training, and personal relationships was most readily available in South Carolina, the children's current residence, the family court abused its discretion in finding South Carolina was an inconvenient forum based on the facts in the record); *McGee v. McGee,* 287 S.C. 644, 340 S.E.2d 571 (Ct.App.1986) (Court need not address husband's claim that family court erred in finding it lacked jurisdiction over custody issue because family court further found that, even if it had jurisdiction, it would decline to exercise it based on the UCCJA; we found the family court acted within its discretion in declining jurisdiction).

## LAW/ANALYSIS

### 1. TEMPORARY CUSTODY ORDER

The father contends the family court erred in vacating its *ex parte,* temporary order of August 1, 1996 granting emergency custody to him because the best interest of the children would be served by temporary custody being awarded to him.

The *ex parte,* temporary order was issued on August 1, 1996 to preserve the status quo. By its terms, the order was to remain in effect until a hearing on the change of custody request could be held. The hearing was tentatively scheduled for August 30, 1996. However, the mother filed a motion for reconsideration and an emergency hearing was held on August 27, 1996. On that date, the family court determined the custody proceedings in South Carolina should be stayed for 60 days because New York was the more appropriate forum. A custody action was subsequently initiated in New York.

As the family court noted in its order, *ex parte* orders are viewed with disfavor and should be issued only upon exigent circumstances. *See McCoy v. McCoy,* 283 S.C. 383, 385, 323 S.E.2d 517, 518 (1984) ("*Ex parte* orders are condemned by this Court except when justified by exigent circumstances."); *Herring v. Retail Credit Co.,* 266 S.C. 455, 224 S.E.2d 663 (1976) (*ex parte* orders are reserved for those rare instances where there is no adversary interest or where exigent circumstances clearly require that action be taken before there is time for a full hearing).

We find the family court did not err in vacating the *ex parte* order, and note that in any event, the issue is now moot. The temporary order expired when the hearing was held on August 27, 1996 and the family court determined New York was the more appropriate forum and, further, the action has already been heard in New York. Accordingly, the temporary, *ex parte* order is no longer properly before us. *Byrd v. Irmo High School,* 321 S.C. 426, 468 S.E.2d 861 (1996) (the mootness doctrine requires an appellate court to render a decision on an existing, justiciable controversy, not an issue that is moot or academic; an issue becomes moot when a decision, if rendered, will have no practical legal effect upon the existing controversy); *Jernigan v. King,* 312 S.C. 331, 440 S.E.2d 379 (Ct.App.1993) (where reversal on an issue would not change the result, the issue is moot, and the Court of Appeals need not reach it); *City of Aiken v. Cole,* 289 S.C. 239, 345 S.E.2d 760 (Ct.App.1986) (issues which have become moot are not a proper subject for review).

## 2. JURISDICTION AND VENUE

The father contends the family court erred in not hearing this change of custody action in South Carolina. Specifically, the father argues the family court erred in finding New York was the children's home state because South Carolina has exclusive, continuing jurisdiction as the state which entered the initial custody decree; the issue of an inconvenient forum was not before the family court; and the court failed to consider the best interest of the children in finding South Carolina was an inconvenient forum.

518

## Jurisdiction

The UCCJA was enacted to avoid jurisdictional competition and conflict with courts in other states in matters of child custody. S.C.Code Ann. § 20–7–784 (1985). Under the UCCJA, a state has jurisdiction to make an initial or change of custody determination if (1) the state has been the "home state" of the child for the six months immediately prior to initiation of the proceeding, or (2) it is in the best interest of the child that the state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with the state and (ii) substantial evidence is available in the state concerning the child's present or future care, protection, training, and personal relationships. S.C.Code Ann. § 20–7–788(1) & (2) (1985).

"Home state" means the state where the child lived with a parent for at least six consecutive months immediately preceding the time of the action. S.C.Code Ann. § 20–7–786(5) (1985).

Although more than one state may meet the jurisdictional requirements under the UCCJA, once a custody decree has been entered, the continuing jurisdiction of the decree state is exclusive. *Sinclair v. Albrecht,* 287 S.C. 20, 336 S.E.2d 485 (Ct.App.1985). This jurisdiction continues if one parent continues to reside in the decree state and substantial evidence remains there, even though another state has become the child's home state. *Id.* If connection with the decree state ends because all parties involved have moved away or contact with the decree state has become slight, another state may assume jurisdiction to modify the decree. *Id. See also Knoth v. Knoth,* 297 S.C. 460, 377 S.E.2d 340 (1989) (the jurisdiction of the decree state is exclusive and continues unless the state no longer meets the jurisdictional requirements or declines to exercise jurisdiction; exclusive continuing jurisdiction is not affected by the child's residence in another state, and the fact that the court previously considered the case is one factor favoring its continuing jurisdiction).

As the decree state, South Carolina clearly had continuing jurisdiction in the case *sub judice* based on the fact that at least one parent, the father, continued to reside here and the children visited him and remained in contact with him

in South Carolina. *Knoth,* 297 S.C. 460, 377 S.E.2d 340; *Sinclair,* 287 S.C. 20, 336 S.E.2d 485.

## Inconvenient Forum

 Even if a state has jurisdiction to consider a custody issue, however, the family court in its discretion may decline to exercise jurisdiction if it finds that it is an inconvenient forum to make a custody determination under the circumstances and another state is a more appropriate forum. S.C.Code Ann. § 20–7–796(1) (1985). The court may make a finding that it is an inconvenient forum upon its own motion or upon motion of a party or a guardian *ad litem.* S.C.Code Ann. § 20–7–796(2) (1985). If the court finds that it is an inconvenient forum, it may dismiss the proceedings or it may stay the proceedings upon the condition that a custody action be promptly commenced in another named state. S.C.Code Ann. § 20–7–796(e) (1985).

In determining whether it is an inconvenient forum, the UCCJA provides a court should consider whether it is in the child's interest that another state assume jurisdiction by evaluating the following factors, among others:

(1) If another state is or recently was the child's home state;

(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;

(3) If substantial evidence concerning the child's present or future care, protection, training and personal relationships are more readily available in another state;

(4) if the parties have agreed on another forum which is no less appropriate;

(5) If the exercise of jurisdiction by a court of this State would contravene any of the purposes state in § 20–7–784.

S.C.Code Ann. § 20–7–796(c) (1985).

In *McGee,* 287 S.C. 644, 340 S.E.2d 571, we found the family court did not abuse its discretion in determining that Georgia, rather than South Carolina, was the more appropriate forum for a custody action. Although the parents were divorced in

South Carolina and the father continued to live here, the mother and the couple's son had lived in Georgia for five years. The child had attended school in Georgia for three years, all of his recent medical records were in Georgia, and all of his extracurricular activities were centered in Georgia. Therefore, those people most familiar with the child's current condition, such as teachers, friends, and neighbors, were in Georgia. We found the family court properly weighed the factors enumerated in § 20–7–796(c)(1) to (5) in determining Georgia was the more appropriate forum.

In contrast, in *Mansour*, 296 S.C. 215, 371 S.E.2d 537, the South Carolina Supreme Court found the family court abused its discretion in finding Connecticut was the more convenient forum for hearing a custody dispute where the mother remained in Connecticut, but the father and the children had resided in South Carolina for a full year. The children had attended school in South Carolina for the entire year, their most current school and medical records were in South Carolina, and South Carolina was the children's home state. The Supreme Court found South Carolina was therefore the more appropriate forum.

In the case now before us, we find the family court did not abuse its discretion in declining to exercise its jurisdiction so that a change of custody action could be instituted in New York. Although the father remained in South Carolina, New York was clearly the children's home state under § 20–7–786(5) as they had resided in New York with their mother from 1991 until the time this action was instituted in 1996.

As the children's home state for over five years, New York had the most significant connection to the children and was the location of the witnesses who could testify about their daily activities and current condition. The children were enrolled in school in New York, attended church there, and spent most of their time there. Further, any evidence of the children's alleged mistreatment would necessarily come from New York. We note the mother raised the issue of South Carolina being an inconvenient forum in her motion to the family court seeking reconsideration of the August 1, 1996 *ex parte* order. Further, the court had the authority to consider the issue *sua sponte* under § 20–7–796(2). Accordingly, we

affirm the family court's finding that New York is the more appropriate forum for this change of custody action. *McGee,* 287 S.C. 644, 340 S.E.2d 571.

### 3. Award of Travel Expenses

■ The family court ordered the father to pay the children's travel expenses for their immediate return to New York. The judge stated at the emergency hearing on August 27, 1996 that he was making this determination "in view of the fact that we are here today on the behest of Mr. Charest and in view of the fact that he was the moving party to delay the return of the children."

The father contends the family court erred in ordering him to pay the children's return travel expenses because the statutory requirements for imposing these costs under S.C.Code Ann. § 20–7–796(g) (1985) were not met. Section 20–7–796(g) provides in pertinent part:

> If it appears to the court that it is clearly an inappropriate forum it may require the party who commenced the proceedings to pay necessary travel and other expenses, including attorneys' fees, incurred by other parties or their witnesses.

In our view, although South Carolina retained continuing jurisdiction by virtue of the UCCJA, it had not been the home state of the children for over five years. Further, all of the evidence pertaining to the allegations in the father's affidavit would necessarily come from New York, not South Carolina. Therefore, South Carolina clearly was not the appropriate forum for instituting this action. Accordingly, we find no error in the family court's determination that the father should pay for the children's return to New York.

### CONCLUSION

For the foregoing reasons, we affirm the family court's decision to decline jurisdiction of the change of custody action on the basis that New York is clearly the more appropriate

522

forum, and its determination that the father should pay the travel expenses for returning the children to New York.

**AFFIRMED.**

CONNOR and HUFF, JJ., concur.