633 S.E.2d 173

Judith Ann Burckle CLAY, Appellant,

v.

Daryl James BURCKLE, Respondent.

No. 4138.

Court of Appeals of South Carolina.

Submitted June 1, 2006.

Decided July 17, 2006.

John L. Creson, of Augusta, for Appellant.

Paul Andrew Anderson, of Aiken, for Respondent.

STILWELL, J.:

Judith Burckle Clay (Mother) appeals the family court's order naming Daryl Burckle (Father) primary residential parent of their son. Mother argues South Carolina lacked jurisdiction over the matter because Florida still had exclusive jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA) and the Parental Kidnapping Prevention Act (PKPA). We agree and vacate the order of the family court.[1]

## FACTS

Mother and Father married on November 24, 1993, and had one child. The family resided together in Florida until Mother and Father were granted a divorce by the Florida circuit court in 1997. The divorce decree provided Mother and Father share parental responsibility for the child. The decree designated Mother as the primary residential parent and ordered that Father receive visitation. Both parties remarried and continued to reside in Florida. However, after several domestic disputes involving Mother and her new husband, the Juvenile Division of the Florida circuit court granted temporary custody to Father. Eventually, the court made Father the permanent, primary residential parent of the child and granted Mother supervised and telephone visitation.

On July 23, 2002, Mother moved to establish unsupervised visitation, to address counseling for the child, and other related issues. Additionally, on August 15, 2002, Mother filed a motion seeking to prevent the removal of the child from the jurisdiction of the Florida court. On August 26, 2002, Father submitted a letter supplying the court with his new address and informing it that as of August 19, 2002, he lived in South Carolina.

Thereafter, Mother filed a supplemental motion in the Florida court to modify custody or visitation. The court found Father was to continue to serve as the primary residential parent, but Mother was to have unsupervised visitation with

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

the child. Mother traveled to South Carolina in an attempt to exercise visitation with the child for the Thanksgiving 2003 holiday, but she, even with assistance from South Carolina law enforcement officers, was unable to locate Father or the child.

On December 17, 2003, Mother filed a motion for contempt in the Florida court seeking to compel Father's compliance with the court's visitation order. At the contempt hearing, Father appeared only through counsel. The court issued an order finding Father to be in willful contempt of its previous order granting Mother visitation. In support of its finding of contempt, the court found Father refused to allow visitation or any contact by telephone or mail. Further, the court found Father was incapable of performing his duties as primary residential parent, and the situations that caused Mother to lose custody no longer existed. The circuit court ordered "as a sanction for [Father's] contemptuous conduct and pursuant to Florida Statute 61.13(4)(c)(5), [Mother] will hereafter be designated as the primary residential parent."

Mother traveled to South Carolina to pick up the child as provided by the Florida court's order, but Father would not allow her to take the child. As a result, Mother filed an action in South Carolina family court to enforce the Florida court's order making her the primary residential parent. The South Carolina family court held a hearing and issued a bench order for the sheriff to locate the child and place him in the custody of Mother. Father refused to turn the child over, obtained a new attorney, and filed a motion in the South Carolina family court to reconsider, alter, or amend the previous order requiring him to relinquish custody.

On August 31, 2004, the South Carolina family court held a hearing on Father's motion. In addition, it held an emergency hearing regarding the custody of the child. The court issued its order finding the Florida court did not have jurisdiction over the child because South Carolina was the home state of the child at the time Mother brought the last custody related action in Florida. The South Carolina family court vacated its previous order and declared it would not follow the Florida circuit court order that awarded Mother custody. In a separate order, the family court awarded Father custody of the child and ordered the child not be removed from South

Carolina. Additionally, the South Carolina court found Mother was entitled to supervised visitation as she and Father could agree. It is that order we address on appeal.

In the meantime, Father appealed to the Florida District Court of Appeals the Florida trial court's order changing custody to Mother. The Florida appellate court agreed with Father's argument that the Florida trial court erred in changing custody to Mother because she did not ask for that relief and reversed that portion of the trial court's order but affirmed the finding of contempt. The Florida appellate court remanded the case to the trial court for it to "fashion a suitable sanction for the contempt."

Mother then sought to supplement the record on appeal in our court to include the Florida appellate court's opinion, prompting the response from Father that he would not contest its inclusion if the decision of the trial court on remand would also be included in the supplement to the record. This court granted the motion to supplement the record with both the appellate court's opinion and the circuit court's order on remand.

In the order on remand, the Florida trial court adamantly reasserted its exclusive jurisdiction and ordered Father to continue as primary residential parent with specified unsupervised visitation for Mother over various holidays and school breaks, together with other electronic and telephonic methods of visitation.

## LAW/ANALYSIS

Mother appeals the South Carolina family court's order denying her custody and mandating supervised visitation "as agreeable between the parties." Mother argues the South Carolina family court lacked jurisdiction to issue such an order in this custody matter under the PKPA, 28 U.S.C. § 1738A (2000) and the UCCJA, S.C.Code Ann. § 20–7–782 to –830 (1976). We agree.[2]

---

**2.** Because we find the family court did not have jurisdiction over this matter, addressing Mother's additional argument questioning Father's notice of the Florida circuit court proceedings would be improper.

The PKPA and UCCJA "govern the subject matter jurisdiction of state courts to rule in interstate custody disputes. Because the PKPA is federal legislation, its provisions will govern any conflict between it and the UCCJA. . . ." *Widdicombe v. Tucker–Cales,* 366 S.C. 75, 86, 620 S.E.2d 333, 339 (Ct.App.2005) (cert.pending) (internal citations omitted). The PKPA mandates three criteria for a court to retain continuing jurisdiction: "1) that the original custody determination was entered consistently with the provisions of the PKPA; 2) that the court maintain jurisdiction under its own state law . . .; and 3) that the state remains the residence of the child or of any contestant." *Id.; see also* 28 U.S.C. 1738A(d).

Because Florida issued the initial custody decree, we apply the PKPA test to determine if it retained continuing jurisdiction over the matter. At the time of the original custody decree, Mother, Father, and the child were all residents of Florida, where the original decree was issued. Accordingly, Florida met the first requirement for retaining jurisdiction because the original decree was consistent with the provisions of the PKPA. *See Widdicombe* at 86–87, 620 S.E.2d at 339.

The second requirement is that Florida maintained jurisdiction under its own state law. Florida has enacted the Uniform Child Custody Jurisdiction and Enforcement Act, which is the successor to the UCCJA. The relevant section provides:

1) Except as otherwise provided in s. 61.517, a court of this state which has made a child custody determination consistent with s. 61.514 or s. 61.516 has exclusive, continuing jurisdiction over the determination until:

(a) A court of this state determines that the child, the child's parents, and any person acting as a parent do not have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

(b) A court of this state or a court of another state determines that the child, the child's parent, and any person acting as a parent do not presently reside in this state.

Fla. Stat. 61.515 (2002). Clearly, 1(a) does not apply to the current situation because no Florida court has found that the

state lacks a significant connection with the parties. To the contrary, the Florida circuit court repeatedly stated that it has exclusive jurisdiction. As to 1(b), Mother continues to reside in Florida. Accordingly, under Florida law, Florida has met the second requirement to establish exclusive, continuing jurisdiction.

The third criterion, that the state remains the residence of the child or of any contestant, is easily met by Florida as well. Even though the child and Father have moved out of state, Mother has remained a resident of Florida throughout the proceedings. Therefore, Florida meets the third requirement of the PKPA for continuing jurisdiction.

Florida meets all three requirements mandated by the PKPA for it to have continuing jurisdiction. Accordingly, under 28 U.S.C. 1738A(d), the South Carolina family court did not have jurisdiction over the matter.

Additionally, the PKPA addresses the specific instance when one state's court may modify a custody order issued by another state:

A court of a State may modify a determination of the custody of the same child made by a court of another State, if—(1) it has jurisdiction to make such a child custody determination; and (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

28 U.S.C. § 1738A(f)(2000). This section is nearly identical to the pertinent section in South Carolina's version of the UC-CJA, which provides:

If a court of another state has made a custody decree, a court of this State shall not modify that decree unless (1) it appears to the court of this State that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this subarticle or has declined to assume jurisdiction to modify the decree and (2) the court of this State has jurisdiction.

S.C.Code Ann. 20–7–810(a) (1976). As discussed above, Florida retains jurisdiction and, therefore, South Carolina was not in a position to modify the Florida court's order relating to the child's custody.

One of the main purposes of legislation like the UCCJA is to avoid conflicting custody decrees between states. *Widdicombe* at 87, 620 S.E.2d at 339; *see also* S.C.Code Ann. 20–7–784(a)(6)(7) 1976) (other purposes include "avoid[ing] relitigation of custody decisions of other states in this State insofar as feasible" and "facilitat[ing] the enforcement of custody decrees of other states"). In considering similar cases, our courts have given great deference to the jurisdiction of the state that originally ruled on a custody matter. *Widdicombe* at 87, 620 S.E.2d at 339–40. "Courts which render a custody decree normally retain continuing jurisdiction to modify the decree under local law." *Knoth v. Knoth,* 297 S.C. 460, 463, 377 S.E.2d 340, 342 (1989). "Although more than one state may meet these jurisdictional requirements, once a custody decree has been entered, the continuing jurisdiction of the decree state is exclusive." *Sinclair v. Albrecht,* 287 S.C. 20, 23, 336 S.E.2d 485, 487 (Ct.App.1985). A child's residence in another state is not dispositive of this jurisdictional question. *Knoth* at 464, 377 S.E.2d at 342–43. If the prior state still has sufficient contact with the case to satisfy the jurisdictional requirements, all petitions for modification must be addressed in that state. *Id.* at 463, 377 S.E.2d at 342. The court's previous consideration of the case is one factor in favor of its continued jurisdiction. *Id.* When a state attempts to exercise continuing jurisdiction over a custody decree on which it has previously ruled, we interpret the jurisdictional requirements in the UCCJA broadly. *Widdicombe* at 87, 620 S.E.2d at 340. Because Florida issued the initial custody and properly continued to exercise jurisdiction in the case, South Carolina's assumption of jurisdiction was inappropriate under the UCCJA as well.

The Florida courts have continued to exert continuing jurisdiction throughout the proceedings. Under both the PKPA and the UCCJA, the South Carolina family court improperly assumed jurisdiction. Accordingly, because the South Carolina family court lacked jurisdiction, its order is

**VACATED.**

HUFF and BEATTY, JJ., concur.